## Case No. 2,406.

### CARGO OF SALT.

[4 Blatchf. 224; [1] 40 Hunt, Mer. Mag. 457.]

Circuit Court, S. D. New York. Oct. 2, 1858.

CHARTER PARTY—AUTHORITY OF AGENT TO CHANGE—FREIGHT—DEMURRAGE.

1. Where a charter-party for a voyage from New York to Gibraltar and Malaga and back, provided for the carrying of any lawful cargo, and for the payment of one-half of the freight on the discharge of the outward cargo, and of the other half on the discharge of the homeward cargo, and, there being no fruit to load with at Malaga, the vessel took a homeward cargo of salt at Gibraltar, under an arrangement made between the master and the agent of the charterers, at Malaga, that the salt should be discharged at New York in three days' time, the usual time for discharging a cargo of fruit: Held, that the agent at Malaga had no power to change the terms and condition of the charter-party.

2. Held, also, that, as the charter-party contained no provision as to the discharge of the homeward cargo other than that dispatch should be used, and as the usual time for unloading a cargo of salt at New York was fifteen days, Sundays and rainy days excepted, no right of action for the homeward freight, and no claim for demurrage of the vessel, could exist till the expiration of the fifteen days.

[3. Cited in Fourteen Horses, etc., Case No. 4,090, to the point that freight is not due until the discharge of the cargo, for until such discharge the voyage is not completed, nor is the ship's contract fully performed.]

[See The Tangier, 32 Fed. 230; Simpson v. One Hundred and Eleven Sticks of Hewn Timber, 7 Fed. 243.]

[Appeal from the district court of the United States for the southern district of New York.]

In admiralty. This was a libel in rem, filed in the district court, by [Freeman and others] the owners of a vessel, against her cargo of salt, to recover freight and demurrage, on its shipment from Gibraltar to New York, under a charter-party. The charter-party was entered into for a voyage from the port of New York to Gibraltar, or from New York to Gibraltar and Malaga, and

---

[1] Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

back, and the owners engaged "to take and receive on board the said vessel, during the aforesaid voyage, all such lawful goods and merchandize as the said parties of the second part, or their agent, may think proper to ship." Twenty-six hundred dollars freight were to be paid if Gibraltar only was used, and twenty-seven hundred if Malaga was used; one-half to be paid upon the discharge of the outward cargo, and the other half upon the discharge of the homeward cargo. Part of the outward cargo was discharged at Gibraltar, and part at Malaga. No home cargo could be procured at Malaga, and the vessel returned to Gibraltar, and was loaded with a cargo of salt. Malaga is some 50 miles from Gibraltar. The freight on the outward cargo, according to the charter-party, was paid, and the only questions in the case were in respect to the freight at the home port, and a claim for demurrage, a dispute having arisen about the time consumed in discharging the cargo. The district court decreed for the claimants, and the libellants appealed to this court.

Welcome R. Beebe and Charles Donohue, for libellants.

Edward H. Owen, for claimants.

NELSON, Circuit Justice. It is quite apparent, on looking into the case, that this controversy has grown out of a misapprehension, on the part of the owners, of the import and effect of the charter-party, and that, had it not been for this, no difficulty would have existed in adjusting amicably all matters between the parties, connected with the charter of the vessel. The owners have assumed, from a letter of instructions to the master of the vessel by the charterers, in which a premium is offered if he should arrive in the port of New York with the first fruit, that the charter was a fruit-charter, and that the cargo of salt was substituted by an agreement with the agent of the charterers at Malaga, there being no fruit there with which to load the vessel. The master testified to this arrangement, and that it was agreed that the cargo of salt should be discharged at the port of delivery within the same time within which a cargo of fruit could be, namely, some three days. Hence, on the arrival of the vessel here, the owners claimed that the cargo should be discharged within that time. This was refused by the charterers, they claiming that the charter-party provided for the shipment of any lawful goods, and that they were entitled to the usual and customary time for unloading a cargo of salt, which was fifteen days for a cargo of the present bulk, Sundays and rainy days excepted. The owners proposed a compromise of ten days, which was refused. This dispute occasioned some delay in the vessel's reaching the dock for the discharge of her cargo. She reached the dock, however, in a few days after her arrival in port, and commenced the discharge,

the purchaser receiving the salt in lighters and carts, and continued discharging until, as claimed, more than the ten days had expired, when a bill for demurrage of the vessel was presented to the consignees, and payment demanded, which was refused; and thereupon the owners libelled the remaining portion of the cargo for freight and, demurrage.

Now, I consider it quite clear that the charterers were not restricted to any kind of cargo; and, also, that the agent at Malaga had no power to change the terms and conditions of the charter-party; and, further, that, according to its terms, the ship was bound to bring back a cargo from either Gibraltar or Malaga, if tendered by the charterers, or their agent; and, hence, that the claim to have the cargo of salt discharged within the time customary for the discharge of a cargo of fruit, was not well founded. According to the charter-party, the home cargo was to be delivered in no other way than "dispatch to be used;" and the better opinion seems to be, upon the proofs, that these terms refer to custom house time, which is fifteen days, Sundays and rainy days excepted. When, therefore, this suit was commenced, this time not having expired, no right of action existed for the balance of the freight, that not being due, by the terms of the charter-party, till the discharge of the cargo at the home port; and there was no ground for a claim for demurrage. I agree that the master had a lien upon the cargo for the balance of the freight, and might have retained enough of it to satisfy the payment; but no right of action to recover it accrued till the owner had fulfilled his part of the contract, namely, the delivery of the goods. Abb. Shipp. (Perkins' 7th Am. Ed.) marg. p. 377, and note 2; Arthur v. The Cassius [Case No. 564].

The decree below must be affirmed.